## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GODLEANIA T. B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 22-CV-359-JFJ |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Godleania T. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical

evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id*. A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id*. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and the ALJ's Decision

Plaintiff, then a 36-year-old female, protectively applied for Title XVI supplemental security income benefits on July 1, 2019. R. 15, 203-208. Plaintiff later applied for Title II disability insurance benefits on February 11, 2021. R. 15, 209-210. In both applications, Plaintiff alleged a disability onset date of March 1, 2019. R. 15, 203, 209. Plaintiff claimed she was unable to work due to post-traumatic stress disorder ("PTSD"), schizophrenia, personality disorder, and other mental issues. R. 75, 89. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 107-113, 116-125. Plaintiff then requested a hearing before an ALJ, and ALJ Benjamin Chaykin conducted a telephonic hearing on July 29, 2021. R. 34-74, 126-128. The ALJ issued a decision on April 28, 2022, denying benefits and finding Plaintiff not disabled because

she could perform other work existing in the national economy. R. 15-28. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found Plaintiff's last date insured was December 31, 2025. R. 18. At step one, the ALJ found Plaintiff engaged in substantial gainful activity from her alleged onset date of March 1, 2019, through December 31, 2020. *Id.* At step two, the ALJ found Plaintiff had the severe impairments of affective disorder, anxiety disorder, PTSD, and unspecified schizophrenia spectrum and other psychotic disorder ("USS & OPD"). R. 19. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations: "(1) can understand, remember, apply, and carry out simple, 1-2 step tasks, (2) limited to occasional interaction with supervisors and co-workers, and no interaction with the public, and (3) the claimant can sustain concentration and persistence for periods of up to two hours at a time." R. 21. At step four, the ALJ found Plaintiff was unable to perform any past relevant work. R. 26. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work existing in significant numbers in the national economy, including cleaner, bagger, and laundry laborer. R. 27. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and the ALJ concluded that these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled. R. 27-28.

4

**III.     Issues**

Plaintiff raises three points of error on appeal: (1) the ALJ's RFC assessment was legally flawed, because it did not contain all the limitations listed in the ALJ's hypothetical; (2) the ALJ erred in failing to fully and fairly develop the record, because he issued a decision after Plaintiff failed to attend a consultative examination; and (3) the ALJ's mental RFC was unsupported by substantial evidence.  ECF No. 15.

**IV.     Analysis**

  **A.     The Inconsistency Between the ALJ's Decisional RFC and the ALJ's Sole Hypothetical was Harmless Error**

Plaintiff contends the ALJ erred at step five because the ALJ's decisional RFC did not contain a limitation from the ALJ's only hypothetical.  ECF No. 15 at 7-9.  The Commissioner contends the omission was harmless error because the ALJ's hypothetical was more restrictive than the decisional RFC.  ECF No. 22 at 3-4.

During the hearing, the ALJ asked the VE to consider a hypothetical claimant with the same age, education, and work history of Plaintiff that can perform work at all exertional levels with the following nonexertional limitations:

> can understand, remember, apply, and carry out simple one to two-step tasks; limited to occasional interaction with supervisors; and co-workers and no interaction with the public.  The hypothetical claimant can sustain concentration and persistence for periods of up to two hours at a time. . . . [A]nd [the hypothetical claimant is] *limited to occasional changes in a stable work environment.*

R. 66-67 (emphasis added).  The VE testified the hypothetical person with these limitations could perform the jobs of cleaner, bagger, and laundry laborer.  R. 67-68.  The ALJ relied on the hypothetical and the VE's testimony in his decision, using the jobs discussed by the VE.  R. 27.  However, despite mirroring the hypothetical, the ALJ's decisional RFC did not include any limitation to Plaintiff's ability to handle changes in a stable work environment.

5

The Court finds the inconsistency between the ALJ's decisional RFC and the ALJ's hypothetical to be harmless error. An ALJ's omission of a limitation from the decisional RFC is harmless error if the ALJ posed a more restrictive hypothetical to the VE, and the ALJ relied upon the VE's testimony from the more restrictive hypothetical in the ALJ's decision. *Thomas v. Saul*, No. CV 19-1164, 2020 WL 4016035, at *4-5 (D.N.M. July, 16 2020); *Donaho v. Colvin*, No. CIV-14-1105, 2016 WL 379789, at *2 (W.D. Okla. Jan. 29, 2016). An inconsistency between the decisional RFC and a more restrictive hypothetical is harmless error "because the jobs that could be performed by an individual with greater limitations could also be performed by an individual with fewer limitations." *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-3460, 2016 WL 7322788, at *8 (D.N.J. Dec. 15, 2016); *accord Thomas*, 2020 WL 4016035, at *5; *Donaho*, 2016 WL 379789, at *2. In this case, the VE testified that a hypothetical claimant with greater, more restrictive limitations than Plaintiff could perform work as a cleaner, bagger, and laundry laborer. R. 67-68. If a claimant who is limited to occasional changes in a stable work environment can perform these jobs, then a claimant without restrictions to changes in a stable work environment could also perform these jobs. *See Thomas*, 2020 WL 4016035, at *5 (finding harmless error where ALJ's hypothetical limited plaintiff to four total hours of standing and walking but decisional RFC limited plaintiff to eight total hours of standing and walking); *Donaho v. Colvin*, 2016 WL 379789, at *2 (finding harmless error where ALJ's hypothetical completely restricted left arm use but decisional RFC limited plaintiff to "occasional/infrequent reaching, handling, and fingering with the upper left extremity"). *See also Doyle v. Colvin*, No. 14-30098, 2015 WL 3649795, at *5 (D. Mass. June 10, 2015) (finding harmless error where ALJ's hypothetical limited plaintiff to "occasional interaction with coworkers and supervisors and none with the public" but decisional RFC did not include any of these limitations).

### B. The ALJ Adequately Developed the Record

Plaintiff contends the ALJ did not fully and fairly develop the record by issuing an unfavorable decision after Plaintiff failed to attend a consultative examination ("CE"). ECF No. 15 at 8. Plaintiff instead argues the ALJ should have scheduled a supplemental hearing with a medical expert present. *Id.*

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993)). "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). Instead, the "standard is one of reasonable good judgment." *Id.*

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to . . . determin[e] . . . your claim"); 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). A CE is "often required" where (1) "there is a direct conflict in the medical evidence requiring resolution," (2) "the medical evidence in the record is inconclusive," or (3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has held that an "ALJ should order a [CE] when evidence in the record establishes the reasonable

possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169.  Generally, an ALJ has "broad latitude in ordering consultative examinations." *Id.* at 1166.

If the claimant cannot attend a scheduled CE, the regulations require the claimant tell the SSA "as soon as possible."  20 C.F.R. §§ 404.1518(a), 416.918(a).  If the claimant has a "good reason" for missing the appointment, the SSA will schedule another examination. *Id.*  The regulations provide four non-exhaustive examples of what constitutes good reason: (1) illness on the examination date; (2) receiving no notice or not receiving timely notice; (3) receiving incorrect or incomplete information about time and place of the exam or the physician involved; and (4) death or serious illness in your immediate family.  20 C.F.R. §§ 404.1518(b)(1)-(4), 416.918(b)(1)-(4).  The SSA considers the claimant's "physical, mental, educational, and linguistic limitations . . . when determining if [the claimant has] a good reason for failing to attend a consultative examination."  20 C.F.R. §§ 404.1518(a), 416.918(a).  *See also* Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-2-5-24 ("When evaluating [good cause], the ALJ will consider whether the individual has any physical, mental, educational, or linguistic limitations . . . that may have bearing on the failure to cooperate.").[1]  The regulations clearly warn that a claimant who does not provide a good reason for failing to attend a CE may be found not disabled.  20 C.F.R. §§ 404.1518(a), 416.918(a) ("If you . . . do not have a good reason for failing or refusing to take part in a consultative examination . . . , we may find you are not disabled or blind." ).  When the claimant has failed to establish good cause, the ALJ will "[i]ssue a decision based on the available evidence."  HALLEX I-2-5-24 (citing 20 C.F.R. §§ 404.1518, 416.918).

---

[1] The HALLEX is a SSA policy manual that "conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council Staff."  HALLEX I-1-0-1.

Plaintiff's first CE was scheduled on March 23, 2020.  R. 38-39.  Plaintiff did not attend this exam, as this was during the beginning of the COVID-19 pandemic in the United States.  *Id.*  Plaintiff's second CE was scheduled on August 17, 2020.  R. 39.  Plaintiff did not attend this exam because it was roughly ninety minutes away from her home and Plaintiff either could not drive or could not find transportation.  *Id.*  Plaintiff's third CE was on September 16, 2020.  R. 39, 613.  Plaintiff attended this exam but could not complete it.  R. 613.  The consultative examiner reported that Plaintiff exhibited "erratic behavior" before and during the exam, including rocking back and forth and pacing around the room.  *Id.*  He further reported that Plaintiff appeared anxious, paranoid, and agitated; began cursing at him; asked if he was going to "lock her up"; and was unable to provide any basic information about herself.  *Id.*  The consultative examiner ended the exam after Plaintiff opened his office door and began "wandering the halls."  R. 613-614.  At the administrative hearing, Plaintiff's counsel requested another CE.  R. 39-40, 72.  The ALJ granted the request, and Plaintiff's fourth CE was scheduled on November 17, 2021.  R. 15.  Plaintiff did not appear at this examination, did not respond to messages explaining her failure to attend,[2] or request another CE.  R. 15-16.  Plaintiff argues for the first time, some sixteen months after she missed the November 2021 CE, that her mental impairments prevented her from attending.  ECF No. 15 at 9.

The Court finds the ALJ did not commit error by closing the evidence and issuing a decision after Plaintiff failed to attend the November 2021 CE.  While the ALJ did not use the exact term "good cause" or "good reason," the ALJ did consider potential reasons why Plaintiff missed the exam.  The ALJ noted that "the record does not indicate that an impairment prevented her from attending the consultative examination or provide other explanation for her failure to

---

[2] A summary of the SSA's attempts to contact Plaintiff is located within the record.  R. 892.

9

attend the examination." R. 16.  Because Plaintiff did not provide any reason as to why she missed her November 2021 CE, the ALJ issued a decision based on the record evidence, as allowed under the regulations and HALLEX.  No error occurred.  *See White v. Colvin*, No. 13-CV-510, 2014 WL 5765734, at *4 (N.D. Okla. Nov. 5, 2014) (finding no error where ALJ based decision denying benefits on available record evidence after Plaintiff failed to provide good cause for missing CE).[3]

### C. The ALJ's Mental RFC was Supported by Substantial Evidence

Plaintiff argues the ALJ's mental RFC was not supported by substantial evidence because record evidence "overwhelm[s]" the ALJ's RFC finding.  ECF No. 15 at 10.  Plaintiff cites her past mental health issues as evidence that her various impairments were more severe than the ALJ indicated.  *Id.* at 11.

The Court is unpersuaded and finds the ALJ's mental RFC was supported by substantial evidence.  The ALJ considered Plaintiff's mental impairments and found that she had the severe mental impairments of affective disorder, anxiety disorder, PTSD, and USS & OPD.  R. 19.  The ALJ limited Plaintiff's mental RFC to understanding, remembering, applying, and carrying out simple, 1-2 step tasks; occasional interaction with supervisors and co-workers; no public interaction; and sustaining concentration and persistence for up to two hours at a time.  R. 21.  In making this determination the ALJ reviewed Plaintiff's mental health treatment, her activities of daily life, and the prior administrative medical findings of record.  R. 21-26.  The ALJ noted that Plaintiff's treatment at Family and Children Services showed mostly normal mental status

---

[3] In February 2022, the ALJ received a letter from Plaintiff's Case Manager at Family and Children Services.  R. 300.  The letter indicated that Plaintiff's address changed sometime between Plaintiff's July 2021 hearing and the ALJ's April 2022 decision.  *Id.*  It is unclear from the record when Plaintiff moved.  Regardless, Plaintiff does not argue that she missed the November 2021 CE because she did not receive notice of her appointment.  Therefore, the Court does not address this issue further.

examination findings, even when Plaintiff reported substance abuse and noncompliance with medication.  R. 25-26 (citing R. 499, 560, 565, 697, 715-717, 784, 799-800, 830-832).  These examinations revealed that Plaintiff, despite sometimes exhibiting depression, suicidal ideation, and auditory hallucinations, had an appropriate appearance, remained oriented to person, place, time, and situation, interacted appropriately during her sessions, had an adequate memory, and appeared to be of average intelligence.  R. 560, 565, 697, 715-717, 799-800, 831.  The ALJ noted that Plaintiff takes care of her two young children, with some assistance from Plaintiff's uncle, and that Plaintiff worked for 24 hours a week as a hairdresser/hairdresser's assistant for most of 2020.  R. 24.  The ALJ also noted that it found the opinion of state psychological reviewer Cynthia Kampshaefer, Psy.D., persuasive.  R. 26.  Dr. Kampshaefer opined that Plaintiff can only follow simple one to two step instructions, behave in a socially appropriate manner when clean, sober, and in compliance with medication, and had her adaptive functioning intact.  *Id.* (citing R. 83).

Plaintiff fails to demonstrate how the RFC failed to account for her mental impairments or that the ALJ's analysis of those impairments was inadequate.  Plaintiff argues the ALJ "failed to faithfully record" that she began experiencing auditory hallucinations during the hearing.  ECF No. 15 at 11.  However, the ALJ noted Plaintiff's auditory hallucinations throughout the decision, including the hallucination that occurred at the hearing.  R. 22 ("[C]laimant testified that[,] while she was told her sister had passed away, [her sister] was in the room with her during the hearing, and was talking to her."); R. 23 ("The claimant reported auditory hallucinations, such as feeling her deceased sister is still with her.") (citing R. 326); R. 23 ("However, despite some reported audio hallucinations, such as hearing her deceased sister's voice, the record contains many normal mental status exam findings . . . ."); R. 23-24 ("The claimant's reported audio hallucinations, such as hearing deceased relatives, appear to occur when not compliant with treatment advice, including

11

medications.") (citing R. 622); R. 26 ("[T]his opinion is supported by a thorough summary and analysis of the available evidence, including evidence of some complaints of hallucinations, such as hearing deceased relatives, . . . though apparently in the context of substance abuse and noncompliance with medication.") (citing R. 311-335, 376-379, 870-876).  By pointing to evidence the ALJ already considered and discussed, Plaintiff's argument simply invites the court to re-weigh the evidence, which it cannot do.  *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Plaintiff also appears to argue the ALJ needed a medical opinion to support the RFC.  ECF No. 15 at 10 ("It is inappropriate for the ALJ to reach an assessment without expert medical assistance[.]").  In doing so, Plaintiff seemingly alleges the findings and opinions of the state agency reviewers who reviewed Plaintiff's claim were biased and deficient.  *Id.*  ("The non-treating, non-examining State agency reviewers are paid by the government to defend against disability claims.").

Plaintiff's argument is unpersuasive.  First, the ALJ's RFC need not correspond directly to a specific medical opinion.  *Chapo v. Astrue*, 682 F.3d 1285. 1288-89 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").  *See also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").  Second, although not required, the ALJ did find the opinion of Dr. Kampshaefer persuasive.  R. 26.  As a state agency consultant, Dr. Kampshaefer was qualified to offer her medical findings and opinions.  *See* C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) ("Federal or State medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").  Third, as demonstrated above, the ALJ

adequately reviewed the record and cited sufficient evidence in support of the mental RFC.  Thus, the Court finds the ALJ's mental RFC was supported by substantial evidence.

V.      **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 30th day of November, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**